TAPPAN STEVENS AND OTHERS *v.* A. J. WILLARD AND OTHERS.

[IN CHANCERY.]

*Newbury Seminary.    Subscription.    Charter.*

The trustees of Newbury Seminary have no authority to sell and dispose of the property of that institution, and transfer the same or its proceeds to another chartered institution.

THE following statement of the case is by a member of the court.

In 1832 and 1833 the New Hampshire and Vermont Conference of the Methodist Episcopal Church entered upon, and prosecuted to a successful result, the establishment of a seminary of learning, to be under the charge and patronage of said Conference. A committee was appointed by said Conference in that behalf, who, among other things, promulgated that six thousand dollars ought to be raised by the people of the vicinity where the institution should be located, and that should there be several places that should raise the amount proposed, the committee, after taking all the circumstances connected with the several places into consideration, would feel themselves authorized to locate the institution where, in their judgment, it would best promote the public good ; that in the judgment of the committee, " it is expedient for the people in Norwich, Chelsea, and Newbury to be able within four weeks to give the committee information how much they can and will raise towards erecting an academy and funds for the same." The document was dated November 14, 1832.

In conformity with such proposition six thousand dollars was subscribed and paid upon a paper as follows :—" In consideration that the trustees of the Vermont and New Hampshire Conference of the M. E. Church shall locate the seminary (of which they are a committee appointed by said conference for that purpose) at Newbury, and commence building a seminary for the accommodation of scholars in the course of the next season, and prosecute

the same to its completion, which building shall be sufficiently large to accommodate two hundred and fifty scholars, then we the subscribers promise to pay," &c.

On the 17th of January, 1833, said committee certify that they came to a unanimous agreement that Newbury is the most eligible situation for such seminary of any place from which they have received proposals, and on condition that the citizens of that place will raise a voluntary subscription for six thousand dollars, then the committee on behalf of said conference promise to locate and put in operation the contemplated seminary at said Newbury.

In pursuance of said proposal, subscription and agreements, the work of creating the seminary went on, and, at the session of the legislature in 1833, a charter was granted, under which the seminary was established and went into operation. Said charter contains the following clauses, among other things.

" SEC. 1. That there be and hereby is instituted and established in the town of Newbury * * * * at the place where the building erected for the purpose now stands, a literary institution by the name of *The Newbury Seminary*."

SEC. 2. (Certain persons named and their successors) " shall at all times hereafter constitute the board of trustees for the said institution, and be known by the name and style of ' *The Trustees of the Newbury Seminary.*' " Said trustees are declared " a body corporate and politic to all intents and purposes, as well in name as in fact, with all the rights, powers, privileges and immunities incident to such institutions."

SEC. 3 empowers said corporation " to take by gift, grant, purchase, or devise, any estate, real, personal, or mixed, given, or to be given, for the use of the said institution, or the promotion of education therein, to the amount of $50,000, and the same to receive, hold, use and appropriate in their discretion, and in pursuance of the will of the donors, for the use of said institution, and in promotion of the objects of its establishment."

In pursuance of said charter and the organization of the corporation under it, a tract of land was purchased, and the same was conveyed to the trustees under said charter, June 16th, 1834, to them, their successors and assigns, " for the use and benefit

of a literary institution by the name aforesaid of the Newbury Seminary, which is established by law at Newbury aforesaid."

In 1844 the said conference was divided, and Vermont ceased to have connection with New Hampshire in that respect. Thereupon said seminary came under the charge and care of the Vermont Conference, in the same manner it had theretofore been under the charge and care of the New Hampshire and Vermont Conference, and it so continued thenceforward.

Owing to changed circumstances affecting the interests of the Vermont Conference in reference to educational institutions, said Conference, in October, 1865, obtained a charter for a seminary under the name of the Vermont Conference Seminary and Female College, to be located by commissioners thereto only authorized, and which, by said commissioners, was located at Montpelier; and their action was carried into effect by a resolution of said conference at its annual session, April 1, 1867.

In April, 1868, said conference, at its annual session, granted to the trustees of Newbury Seminary the right to sell the property of that institution, and transfer the proceeds to the new seminary at Montpelier; in pursuance of which grant said trustees voted to sell the entire property of Newbury Seminary, and, after paying all the debts that might exist against said institution, the treasurer was authorized and instructed to pay the remaining proceeds to the Vermont Conference Seminary and Female College. In pursuance of these proceedings, said real property was at once sold to. A. J. Willard, one of the defendants, and conveyed to him by a deed executed agreeably to the by-laws of said trustees. The personal property belonging to said Newbury Seminary was also, about the same time, taken therefrom and carried to Montpelier, and delivered into the hands of the trustees of said new institution, located at that place as aforesaid. And about the same time the trustees of Newbury Seminary, in conformity with the wishes and directions of the Vermont Conference, abandoned said Newbury Seminary, said conference having resolved to give its entire patronage and influence to the new institution at Montpelier.

After the establishment of said Seminary at Newbury, towards which said subscription of $6000 was made to secure its location

at that place, it was maintained and supported almost entirely by the liberality and charity of the ministry and membership of the Methodist church within the bounds of the Vermont and New Hampshire Conference. The orators were subscribers to said fund of $6000 raised in behalf of the town of Newbury, and had ever been citizens of said town. The bill was brought in their name, " for themselves and in behalf of that large number of persons having a like interest and standing in like relations to the subject matter of the bill—too numerous to be all joined as parties "—and against said Willard and said trustees. It was entered in the court of chancery for Washington county, September term, 1868. The facts above stated, under proper averments in the bill and answers, are duly shown by the proofs. Upon hearing, the court of chancery, PECK, Chancellor, " ordered that a decree be entered for the orators to the effect that the defendant A. J. Willard convey the real estate deeded to him by the trustees back to the trustees, placing the title back as it was before he received his deed, and that the defendants be enjoined from selling or disposing of the property, real and personal, and from using the same otherwise than in the use and support of the said Newbury Seminary, at Newbury, substantially according to the prayer of the bill in that behalf, with costs." From which decree an appeal was taken to this court by the defendants. The case was argued general term, 1869. The decision was announced general term, 1870.

*Timothy P. Redfield*, for the orators.

A court of equity has power to restrain these trustees of Newbury Seminary from alienating its property to another use. 2 Story's Eq., 486, § 1252 ; *Dart. College* v. *Woodward*, 4 Curtis, 520.

The trustees, " as managers of the revenues of the corporation, are subject to the general powers of a court of chancery, * * * as possessing a general jurisdiction in all cases of *abuse of trusts.*" Same case, p. 512 ; Ang. on Cor., 331–2, 424 ; *Society for Prop. Gospel* v. *New Haven*, 8 Whal., 464 ; *Fuller* v. *Plainfield School*, 6 Conn., 532.

The case shows that the orators and associates paid six thousand dollars upon the *condition* that said school should be perma-

nently established at Newbury, and that the money was accepted by the trustees with the condition.

The attempt to alienate the property of such school thus purchased, and transfer it to *another corporation* and to another place, would be a fraud upon the orators which a court of equity will restrain. Persons who have paid their money upon the promise and in the faith of having a public school established in their midst, stand as the *cestui que trust;* the trustees owe them a *duty* "to administer their bounty according to the *terms* and for the *objects* specified." Story, J., *Dart. College* v. *Woodward, ut supra; Stevens* v. *R. & B. R. R. Co.,* 29 Vt., 546.

It is said the bill should be brought in the name of the corporation. But when the wrong is done by those having the control of the corporation, the proceeding may be had in the name of a stockholder, or others having an interest. An. & Am. on Cor., 312 and note, § 601 ; Redfield on R., 494 and note, 497–8 ; 2 Story's Eq., 486 ; *Austin* v. *Daniel,* 4 Denio, 301 ; *Fassett* v. *Taylor,* 9 Cranch.

Some cases are cited by defendant's counsel where the court give as a reason for not interfering by injunction, that a court of equity could not *run the institution.* But it will be found in those cases that the danger threatened was not *irreparable,* and other remedies existed. But in this case the injury is *irreparable,* and the danger threatened is *annihilation.*

The principle involved in this case concerns not merely one town, or one school. Similar institutions have been established in all the more populous towns, and have become indispensable to the well being of society and the state. They should be fostered and cared for by every department of the government. See *Fletcher et al.* v. *R. & B. R. Co. et al.,* 39 Vt., 641 ; *Montpelier* v. *E. Montpelier,* 27 Ib., 710 ; *Poultney* v. *Wells,* 1 Aik., 180 ; *Pawlet* v. *Clark,* 9 Cranch, 294 ; *Trustees of N. Gloucester School Fund* v. *Wm. Bradley,* 2 Fairfield, 118 ; *Hampshire* v. *Franklin,* 16 Mass., 84.

*C. W. Willard* and *L. P. Poland,* for the defendants.

The legal and equitable title to the seminary property is in the trustees, and if they hold it in trust for anybody it is for the Meth-

Stevens et als. *v.* A. J. Willard et als.

odist church and conference. That church and conference and the trustees have authorized the sale of which the orators complain. The original contract of subscription, so far as these orators are concerned, was fully performed more than thirty years ago, and nothing is left of that contract for the court to enforce. The contract speaks for itself, and there is no evidence in the case that can change or modify in any way the terms of it. See 18 Vt., 266; 16 Barbour, 237.

It cannot be possible that a gift of $350 to Newbury seminary, located at Newbury, is to operate as an anchor to hold the seminary there forever, against the wishes of those who have given more than $30,000 to the institution. Yet this is what the orators ask in their bill. And the case shows that the orators are almost, if not the only persons, objecting to the action of the trustees, and if they have no equities they cannot rest in the equities of others.

The charter cannot help their case. Whatever rights they have were acquired under the contract of subscription, the charter being only a contract between the corporation and the state. The words in the charter respecting the location are words of description and not of limitation. Any citizen of Newbury or any citizen of the state has the same right to ask for this injunction by reason of the act of incorporation that these orators have; that is, no right at all. If the court should grant the injunction, the property must go to waste, as the court of chancery cannot administer it. It is not a case where a court of equity will decree specific performance. Sto. Eq. Jur., §§ 736, 737; *Coe* v. *Columbus & Piqua R. R. Co.*, 10 Ohio, 380: *Port Clinton R. R. Co.* v. *Cleveland & Toledo R. R. Co.*, 13 Ib., 544; *Kimble* v. *Kean*, 6 Simons, 333. So an injunction will not be granted, as that would indirectly produce the same result, or embarrass the application of the property to the fullest realization of the original purpose and design of the donation, there being such a change of circumstances as to affect the character, justice or efficiency of the contract of subscription.

BY THE COURT. The Newbury Seminary was instituted and became a corporate existence by virtue of the act of the legis-

88

lature in 1833, constituting its charter. That charter was the consummation of the preliminary steps taken to found and put in operation the seminary at that place. It was the mode taken by the agents of the conference for carrying into effect, according to what all parties concerned understood it to be, the undertaking on the part of such agents and said conference, in consideration of the $6000 subscribed for the purpose and upon the proposal of establishing the contemplated seminary at Newbury.

It seems plain that the parties concerned contemplated and understood that the institution would have just the kind and duration of permanency at that place that the charter gave it. When the enterprize had resulted in the corporation created by the charter, and was carried into effect under that charter, that corporation had vitality, functions, powers, rights and duties from the charter alone. In these respects it was no longer subsidiary to the will of the conference. The conference no longer owned the property, nor had it authority to control or dispose of it. It was vested in the corporate trustees, to be held and administered upon the trusts and for the uses appointed in the charter. By recurring to the deed of the real estate, it will be seen that the language is very specific and rigid, viz: "for the use and benefit of a literary institution by the name aforesaid of the Newbury Seminary which is established by law at Newbury aforesaid." Then by recurring to the charter it will be seen that § 3 is equally specific and rigid in the language by which the trustees derive their powers under the charter, viz: "to take by gift, grant, &c., for the use of said institution or the promotion of education therein, &c., and the same to receive, hold, use and appropriate in their discretion and in pursuance of the will of the donors, *for the use of said institution and in promotion of the objects of its establishment.*"

These provisions of the charter and the deed, taken in connection with the fact that the charter locates the seminary at Newbury both by name and in fact, would seem to be conclusive that the trustees, under the charter, have the sole and exclusive authority to hold and administer the property of the corporation, and that such authority is limited to the trusts, uses and purposes

prescribed by the charter, viz: "for the use of said institution and in promotion of the objects of its establishment."

The Conference Seminary and Female College, established under the charter of 1865 at Montpelier, is a distinct and independent corporation, and stands in no character or relation of successorship to the Newbury seminary. The fact that it has been brought into existence by the efforts of the conference, and has supplanted the Newbury seminary in the affections and patronage of the conference, gives it no corporate rights as against the other institution, nor does it take from the old institution any tittle of its legal *status* as a corporation under its charter, or of its rights and immunities in the eye of the law as an institution of learning.

Hence it was no more within the legitimate province of the trustees of Newbury seminary to sell or remove the property of that institution for the purpose of giving it to the Montpelier institution, than for any other, not immoral, purpose. For them to do so was to act in direct contrariety of the terms and meaning of the language by which their powers, duties and purposes as trustees were conferred and prescribed, and for the destruction, instead of the maintainance, of the institution in whose service and for the promotion of whose interests they were holding their places and had been clothed with their official powers.

Under these views, and upon the facts shown under the pleadings, the orators are entitled to interpose and invoke the court of chancery to prevent the trustees from disposing of and appropriating the property of the Newbury seminary, in the manner and for the purposes avowed by them.

This view of the case relieves this court from any occasion to consider and decide any other questions made on the argument, and we purposely refrain from intimating an opinion on those questions.

The decree of the court of chancery is affirmed, according to the mandate of this court.

It is understood, since the decision affirming said decree was announced, that Judge WILSON dissents.